IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

GAIL FOSTER, Individually and as     *
Natural Parent of M.K., a Minor
Child,                               *

    Plaintiff,                       *          CASE NO. 4:08-CV-123(CDL)

vs.                                  *

SIDNEY RASPBERRY, Individually       *
and in his Official Capacity as
a Teacher and Employee of            *
Randolph County School District,
*et al.*,                            *

    Defendants.                      *

                                        *

## O R D E R

This action arises from the alleged strip search of high school student Maci King over a missing iPod. Plaintiff, King's mother, contends that the search was a violation of King's Fourth Amendment rights under the United States Constitution and asserts a federal claim pursuant to 42 U.S.C. § 1983 ("§ 1983"). Plaintiff also asserts state law claims of assault, battery, false imprisonment, and intentional infliction of emotional distress. Defendants contend that they are entitled to summary judgment as to all of Plaintiff's claims. Presently pending before the Court is Defendants' Motion for Summary Judgment (Doc. 18). For the following reasons, Defendants' motion is granted in part and denied in part.

1

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When a movant moves for summary judgment, it is the movant's burden to show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). To meet this burden, the movant may point to "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal quotation marks omitted). In the alternative, the movant may show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. A movant is not required to come forth with evidence negating the nonmovant's claim. *See id.*

Once a movant meets its burden, the nonmoving party must produce evidence to show that there *is* a genuine issue of material fact. *See id.* at 324. The nonmoving party must "go beyond the pleadings," *id.*, and point to "specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e)(2); *accord Celotex Corp.*, 477 U.S. at 324. A nonmovant is not required to produce evidence in a form that would be admissible at trial, but he or she must point to some evidence to show a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at

2

324. Such evidence may be in the form of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.* The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the nonmovant and drawing all justifiable inferences in his or her favor, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmovant-there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

FACTUAL BACKGROUND[1]

**I.   The iPod**

On November 26, 2007, seven students attended Defendant Sidney Raspberry's junior ROTC class at Randolph-Clay High School.   They were Maci King ("King"), Kuonteisha Thomas ("Thomas"), Lashondra Williams ("Williams"), Tiara Starling ("Tiara"), Tish Starling ("Tish"), Darius Small ("Small"), and Marquavis James ("James"). (Defs.' [M.D. Ga. R.] 56 Statement of Material Fact[s] on Which There [Are] No[] Genuine Issue[s] to Be Tried [hereinafter SOF] ¶ 1.)   At least one of these students, King, possessed the ubiquitous teenage accessories–an iPod and a cell phone.   Regrettably, she apparently could not part with them during the school day and brought them into the classroom, which was a violation of school policy.   (*Id.* ¶ 2; *see* Defs.' Ex. 1 to Kellogg Dep., Feb. 17, 2009, Randolph-Clay High Sch. Parent & Student Handbook 2007-08 at 10; *id.* at 31 ("Pocket Pagers, cellular phones or electronic communication devices are not permitted on school property during the regular school day and at all school-sponsored activities.").)   King compounded her error in judgment when

---

[1] Plaintiff failed to respond to Defendants' Statement of Material Facts as to Which There is No Genuine Issue to be Tried.  "All material facts contained in the moving part[ies'] statement which are not specifically controverted by the [nonmoving party] in [the nonmoving party's] statement shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. R. 56.  However, the Court has a duty to "review the movant[s'] citations to the record to determine if there is, indeed, no genuine issue of material fact." *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (internal quotation marks omitted).  The Court reviewed Defendants' citations to the record and bases its recitation of the facts upon that review.

she unselfishly permitted Tiara to retrieve the iPod from King's book bag.  Finding the temptation irresistible, Tiara began listening to the iPod, which led to the predictable accompanying dance around the classroom.  (SOF ¶ 4.)  Unfortunately for Tiara (and eventually for King), Raspberry, who was in his side office doing some paperwork, observed Tiara dancing around the classroom.  He confiscated the iPod from her and placed it in the center drawer of his desk in his side office.  (*Id.* ¶ 5.)

Some time later during the class, Raspberry excused himself to use the restroom, providing the opportunity for further mischief involving the tempting iPod.  When the coast was clear, another student in the class, Thomas, deftly retrieved the contraband iPod from Raspberry's desk drawer.  (*Id.* ¶ 6.)  Upon returning from the restroom, Raspberry opened his desk drawer and noticed that the iPod was missing.  (*Id.* ¶ 8.)  Raspberry first attempted to reason with his seven-member class to return the iPod but to no avail.  Recognizing the apparent need for reinforcements, Raspberry called the front desk for assistance.  (*Id.*)

Shortly thereafter, the reinforcements arrived:  Defendant Eddie Sullivan, the school's resource officer/security guard, entered the classroom and demanded that the students identify the culprit.  No one talked, and the situation escalated.  (*Id.* ¶ 9.)  Defendant Tyrone Kellogg, the assistant principal in charge of discipline, and Defendant Mary Perryman, Kellogg's discipline secretary, next arrived

on the scene.  (*Id.* ¶ 10.)  Apparently recognizing that the matter had proceeded over their heads, Sullivan left the classroom and Raspberry returned to his office, leaving Kellogg and Perryman to break the high school code of silence and locate the missing iPod.  (*Id.*)  Kellogg first gave the students an opportunity to confess or at least "rat out" the culprit.  Either out of loyalty or fear, the students remained steadfast in their silence.  (*Id.*)  The investigation then shifted into high gear.  With interrogation failing to achieve the desired result, the school officials moved forward with a more aggressive physical search for the missing iPod.

**II.  The Search**

Apparently having no idea who had the iPod, Kellogg initially instructed everyone in the classroom to open their book bags, pull out their pockets, and untuck their shirts.  (*Id.* ¶ 11.)  That general search yielded a cell phone in King's possession, but no iPod.  (*Id.*)  The general search did weaken the resolve of one student, however, who decided to come clean.  After the search, Tish confided in Kellogg in the hallway that Thomas had taken the iPod.  (*Id.* ¶ 12.)  Hot on the trail of the contraband iPod but also wanting to protect the identity of his informant, Kellogg decided not to confront the alleged culprit Thomas directly at that time.  Instead, he instructed Perryman to "take the [five] girls in the class individually into a storage closet to the side of the classroom and

have them shake out their blouses and roll down their waste [sic] bands in an effort to locate the missing iPod." (*Id.* ¶ 13.)

At this point, the facts become disputed. Taking Plaintiff's version as true, as the Court is required to do at this stage of the proceedings, the school officials did more than have the girls shake out their blouses and roll down their waistbands. According to King, Perryman asked her to remove both her pants and underwear, which is curious since the informant had identified Thomas as the culprit to Kellogg. (*See, e.g.*, King Dep. 35:2-36:11, Feb. 16, 2009.)[2] It is undisputed that Perryman did not find the iPod on King. It is also undisputed that no boys (or men) were present for the actual strip part of the search. Furthermore, no evidence exists that Defendants Jenkins, Byrd, Sullivan, or Raspberry actually participated in the search of King. (*See* SOF ¶ 18.)

## III. Plaintiff's Claims

Plaintiff maintains that the Defendants had no right to force King to remove her clothes in their search for the contraband iPod. Plaintiff asserts claims arising from the botched search against the following: Raspberry, individually and in his official capacity as

---

[2]Even though Plaintiff did not submit a statement of material facts to rebut Defendants' contention that King only had to shake out her blouse and roll down her waistband, the Court's review of Defendants' citations revealed clear testimony to the contrary in King's deposition, so there is a genuine issue of material fact on this point. *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1102 n.4 (11th Cir. 2004) (finding that a genuine issue of material fact existed based on a review of the materials submitted in support of summary judgment motion).

teacher and employee of the RCSD; Sullivan, individually and in his official capacity as resource officer and employee of the RCSD; Perryman, individually and in her official capacity as secretary and employee of the RCSD; Kellogg, individually and in his official capacity as coach and employee of the RCSD; Byrd, individually and in his official capacity as principal and employee of the RCSD; Jenkins, individually and in his official capacity as superintendent and employee of the RCSD; and the RCSD.[3]  Plaintiff contends that Defendants violated King's Fourth Amendment rights and asserts a federal claim pursuant to § 1983.  (Compl. ¶ 56.)  Plaintiff also asserts the following state law claims: (1) assault (*id.* ¶¶ 48-49); (2) battery (*id.* ¶¶ 50-51); (3) false imprisonment (*id.* ¶¶ 52-53); and (4) intentional infliction of emotional distress (*id.* ¶¶ 54-55).

DISCUSSION

## I.   Plaintiff's § 1983 Constitutional Claim

Plaintiff contends that King's constitutional rights were violated and brings a § 1983 claim against all Defendants.  The Court will first address Plaintiff's § 1983 claim against Defendants in their individual capacities.  Then, the Court will address Plaintiff's § 1983 claim against Defendant RCSD.

---

[3]Plaintiff's official capacity claims against the individual Defendants are treated as claims against RCSD.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." (internal quotation marks omitted)); *see also Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (per curiam).

A.   Claims Against Jenkins, Byrd, Sullivan, and Raspberry in their Individual Capacities

Plaintiff failed to point the Court to any evidence to support the contention that Defendants Jenkins, Byrd, Sullivan, or Raspberry participated in the search of King.  Therefore, these Defendants, in their individual capacities, are entitled to summary judgment as to Plaintiff's § 1983 claim.

To the extent Plaintiff attempts to bring supervisory liability claims under § 1983 against Jenkins, Byrd, Sullivan, or Raspberry, those claims likewise fail.  Plaintiff has pointed to no evidence in the record that would lead a reasonable factfinder to conclude that these Defendants supervised or directed the search of King, or were on notice of a history of widespread abuse and failed to correct it. *See Goebert v. Lee County*, 510 F.3d 1312, 1331 (11th Cir. 2007) (noting that in order to establish that a defendant committed a constitutional violation in his supervisory capacity, a plaintiff must show that "the defendant instituted a custom or policy [that] result[s] in deliberate indifference to constitutional rights or . . . directed [his] subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so" (alterations in original) (internal quotation marks omitted)); *see also Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) ("Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there

is a causal connection between actions of the supervising official and the alleged constitutional deprivation.").

For all of these reasons, Defendants Jenkins, Byrd, Sullivan, and Raspberry are entitled to summary judgment as to all federal law claims brought against them in their individual capacities.

B.   Claims Against Defendants Kellogg and Perryman in their Individual Capacities

Defendants Kellogg and Perryman, in their individual capacities, contend that their actions did not rise to the level of a Fourth Amendment violation because the search of King was both justified at its inception and permissible in its scope.  Alternatively, they maintain that even if there was a constitutional violation, they are entitled to qualified immunity because the law was not clearly established to give them notice that their actions were unconstitutional.

1.   *Existence of a Constitutional Violation*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV.  This protection is available to students who are subjected to unreasonable searches by public school officials.  *E.g., Safford Unified Sch. Dist. No. 1 v. Redding*, 129 S. Ct. 2633, 2639 (2009).  The standard for determining the validity of a search by school officials is the "reasonableness, under all the circumstances, of the search."  *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985); *see Redding*, 129 S. Ct.

10

at 2639.   Determining the reasonableness of such a search entails a two-part inquiry.   First, the Court "must consider whether the . . . action was justified at its inception." *T.L.O.*, 469 U.S. at 341 (alteration in original) (internal quotation marks omitted). Second, the Court "must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (internal quotation marks omitted).

> Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.   Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*Id.* at 341-42.

With a "very limited exception," the school officials must have reasonable grounds for suspicion that the particular student searched possesses the contraband in order for the search to be fundamentally sound.   *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1167 (11th Cir. 2001), *vacated*, 536 U.S. 953 (2002), *reinstated*, 323 F.3d 950 (11th Cir. 2003).   The limited exception to the individualized suspicion requirement permits a search of public school students "without individualized suspicion when 'the privacy interests implicated by the search are minimal, and . . . an important governmental interest furthered by the intrusion would be placed in

11

jeopardy by a requirement of individualized suspicion.'" *Id.* (alteration in original) (quoting *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 624 (1989)).

In this case, the school officials allegedly forced a teenage girl to strip off her clothes so that they could find an iPod.  No evidence has been submitted that the iPod was dangerous (or even that it included any subversive tunes).  It was simply not permitted on school grounds and could be disruptive to the learning environment, but it clearly was not "dangerous" contraband.

In summary, the facts construed in favor of Plaintiff establish that King was subjected to an intrusive strip search that involved removal of both her pants and underwear.  The object of the search posed no immediate danger to anyone at the school.  Moreover, Kellogg and Perryman had no individualized suspicion that King had the iPod in her possession.  In fact, Kellogg's informant told her that Thomas, not King, had the iPod.  The only assertion Kellogg and Perryman made in support of their claim that they had an individualized suspicion was that "another student had revealed to Coach Kellogg that Maci [King] was the individual who brought the iPod into the classroom." (Defs.' Br. in Supp. of Mot. for Summ. J. [hereinafter Defs.' Br.] 11.)  It is speculation to conclude from this that King retrieved the iPod from the teacher's desk.  Moreover, Kellogg acknowledges that he ordered the search of King, among others, to protect the identity of Tish, the informant who revealed

12

to Kellogg that Thomas took the iPod.  (SOF ¶¶ 12 & 13.)  The search was not done because of an individualized suspicion that King had the iPod.[4]  Thus, the Court concludes that based upon Plaintiff's version of what happened, Defendants did not have an individualized suspicion that King had the iPod.[5]  The Court finds that if a jury determines that King was subjected to a strip search as she claims, then that jury would be authorized to find that the search violated King's Fourth Amendment right to be free from unreasonable searches by school officials.  This finding, however, does not end the inquiry as to the individual liability of Kellogg and Perryman.

---

[4]The Court has its doubts as to whether the assertion made by Kellogg and Perryman–that another student told Kellogg that King brought the iPod to school–is actually supported by the record.  Defendants failed to point the Court to any evidence on this issue but simply make the assertion in their briefs.  Even if they had pointed the Court to evidence supporting this assertion, it would not matter.  The fact that King may have possessed the iPod when she came to school that morning does not mean that she possessed it when the search occurred, particularly when Kellogg and Perryman knew that prior to the search the iPod had been retrieved by Raspberry, placed in his drawer, then taken from the drawer by someone other than King (at least according to Kellogg's informant).  When the facts are viewed in the light most favorable to Plaintiff, they reveal that Kellogg and Perryman did not have an individualized suspicion that King had the iPod at the time she was strip searched.

[5]Even if Kellogg and Perryman had an individualized suspicion that King had the iPod, the scope of the search was not reasonable under the circumstances because there was no indication of danger to the students or any reason to suppose that King was carrying the iPod in her underwear. *See Redding*, 129 S. Ct. at 2639-43 (concluding that the strip search of a thirteen-year-old student who was reasonably suspected of bringing forbidden prescription and over-the-counter drugs to school was unconstitutional because there was no evidence (1) that the drugs the student possessed were dangerous or (2) that the student was carrying the pills in her underwear); *see id.* at 2643 ("[T]he *T.L.O.* concern to limit a school search to reasonable scope requires the support of reasonable suspicion of danger or of resort to underwear for hiding evidence of wrongdoing before a search can reasonably make the quantum leap from outer clothes and backpacks to exposure of intimate parts.").

2.   *Qualified Immunity*

For Kellogg and Perryman to be individually liable for the unconstitutional search, the Plaintiff must overcome their qualified immunity defenses.   Defendants argue that even if their actions violated the Fourth Amendment, they are nevertheless entitled to qualified immunity because they did not have "'fair warning' that their conduct, considering the particular circumstances of this case, was unconstitutional." (Defs.' Br. 13.) Qualified immunity protects government officials performing discretionary functions from liability as long as their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks omitted).   Plaintiff does not appear to dispute that Defendants were performing discretionary functions when they performed the search in question.   The next question is whether the search violated clearly established law.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 739 (internal quotation marks omitted). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* at 741.   Furthermore, "materially similar" facts are not necessary to a finding that the law is clearly established. *Id.* Thus, the "salient question" is whether the state

14

of the law at the time of the incident gave Defendants "fair warning that their alleged [actions were] unconstitutional." *Id.*

The qualified immunity question presented in this case is whether Fourth Amendment law "clearly established" that a strip search of a student for an iPod–without individualized suspicion–was unconstitutional.  A right may be clearly established for qualified immunity purposes in one of three ways: (1) "case law with indistinguishable facts clearly establish[es] the constitutional right;" (2) "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right;" or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291-92 (11th Cir. 2009); *see, e.g., Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007); *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).

Plaintiff points to established law pre-existing the iPod strip search here to demonstrate that Defendants had fair notice that their conduct violated clear federal law.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins ex rel. Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997) (en banc).

The Court finds that the Eleventh Circuit's decision in *Thomas* put Defendants on notice that the search of King violated King's Fourth Amendment rights.  In *Thomas*, the plaintiffs, fifth graders, were strip searched by the defendants over twenty-six dollars that went missing from the teacher's desk.  261 F.3d at 1163.  Determining that the defendants did not have any individualized suspicion that the particular students took the money, the Eleventh Circuit applied the *Skinner* balancing test.  *Id.* at 1167, 1168.  The court "conclude[d] that the students had an important privacy interest in not being unclothed involuntarily." *Id.* at 1168.  The court further concluded that the strip search was highly intrusive and that the interest at stake was not sufficiently important to justify the searches.  *Id.* at 1169.  Specifically, the court reasoned that "the alleged theft of twenty-six dollars, while certainly not insignificant in the context of a grade school, does not present such an extreme threat to school discipline or safety that children may be subject to intrusive strip searches without individualized suspicion." *Id.*

Defendants contend that there are at least three factual differences between *Thomas* and this case, and thus, *Thomas* did not put Defendants on sufficient notice that their conduct violated King's constitutional rights.  First, Defendants argue that the missing iPod in this case "was specifically prohibited by school rules unlike money from a candy sale as was the case in *Thomas*."

16

(Defs.' Br. 10; *id.* at 11 ("Maci King could have avoided being subjected to any search whatsoever had she not admittedly violated school rules by bringing an iPod into the classroom . . . .").) Second, Defendants contend that "there was no evidence in *Thomas* that any of the students searched knew anything about the whereabouts of the stolen money," whereas in this case, King knew "who had without authorization removed the iPod from Sergeant Major Raspberry's office desk[.]" (*Id.* at 10 ("There would of course have been no need for any search had Maci King simply told the truth when asked and divulged that Kuonteisha Thomas had possession of the iPod.").)   Lastly, Defendants contend that, unlike the defendants in *Thomas*, Defendants in this case had an individualized suspicion that King had the iPod. (*Id.* at 11.)

The Court finds Defendant's attempt to distinguish *Thomas* for qualified immunity purposes unpersuasive.  First, the Court rejects Defendant's apparent argument that *Thomas* only put school officials on notice that they needed individualized suspicion before they could conduct a strip search for non-dangerous items *that were not expressly prohibited by school regulations or policy.*  The holding and rationale in *Thomas* make it clear that even if the non-dangerous contraband is not allowed on school grounds by express rule, school officials cannot search a student's underwear without individualized suspicion.  Second, the record construed in Plaintiff's favor establishes that Kellogg and Perryman did not know whether King knew

17

who took the iPod at the time of the search.  Finally, the evidence available to Kellogg from his informant pointed away from King not at her.  A jury could certainly conclude from the evidence that Kellogg and Perryman had no individualized suspicion that King had the iPod in her possession at the time she was forced to strip off her clothes.

The Court finds that at the time of the search in this case Defendants Kellogg and Perryman were on notice that a missing iPod, albeit an item prohibited on school property, "d[id] not present such an extreme threat to school discipline or safety that [King] [could] be subject to [an] intrusive strip search[] without individualized suspicion." *Thomas*, 261 F.3d at 1169.  Therefore, based on the record viewed in the light most favorable to Plaintiff, Kellogg and Perryman are not entitled to qualified immunity at this stage.[6] Accordingly, the Court denies their motion for summary judgment as to Plaintiff's § 1983 claims against them in their individual capacities based upon their alleged violation of King's Fourth Amendment right to be free from an unreasonable search.[7]

_____

[6]The Court's ruling does not mean that Kellogg and Perryman will not be entitled to qualified immunity at trial.  Rather, it simply means that a jury must resolve central fact issues before the qualified immunity decision can be made.

[7]The Court reaches this conclusion after carefully considering the scope of the Supreme Court's recent ruling in *Redding*.  In *Redding*, the Supreme Court concluded that the defendants violated the plaintiff's constitutional rights, but also concluded that those defendants were entitled to qualified immunity because, *inter alia*, "the lower courts [had] reached divergent conclusions regarding how the *T.L.O.* standard applie[d] to [strip] searches." *Redding*, 129 S. Ct. at 2644 ("[T]he cases

C.   Defendant Randolph County School District

Plaintiff alleges in her Complaint that RCSD is "liable under the doctrine of Respondeat Superior for the tortuous [sic] acts and omissions of its employees." (Compl. ¶ 45.)[8]  It is well established

---

viewing school strip searches differently from the way we see them are numerous enough, with well-reasoned majority and dissenting opinions, to counsel doubt that we were sufficiently clear in the prior statement of law.").

One may ask: if the defendants in *Redding* were entitled to qualified immunity because the law on student strip searches was not clearly established until *Redding* was decided in 2009, then why are Defendants here not also entitled to qualified immunity for this search that occurred in 2007?  The Court finds that the law in the Eleventh Circuit was clearly established in 2007 and that *Redding,* at least insofar as the Eleventh Circuit is concerned, did not change that.  The controlling law at the time of this search was the Eleventh Circuit's holding in *Thomas.*  The existing Eleventh Circuit precedent was not divergent.  In the Eleventh Circuit, an intrusive search of a student over a non-dangerous item without individualized suspicion is a direct violation of that student's constitutional rights under the *T.L.O.* standard.  *Redding* did not change this clearly established Eleventh Circuit law.  In fact, it essentially confirmed what the Eleventh Circuit had held in *Thomas.*  Therefore, at the time of the search here, it was clearly established that such strip searches were unconstitutional in this Circuit and *Redding* did not alter that established precedent.  The reason the defendants in *Redding* were entitled to qualified immunity is that the law in the Ninth Circuit was not as clear at the time of the *Redding* search.  In fact, although the Ninth Circuit found no qualified immunity, it acknowledged that there was no pre-existing precedent directly on point.  *See Redding v. Safford Unified Sch. Dist. No. 1*, 531 F.3d 1071, 1087 (9th Cir. 2008) (en banc) ("That there is no case precisely on all fours does not preclude the conclusion that the Fourth Amendment right at issue was clearly established when the school officials stripped and searched [the plaintiff].")*; see id.* at 1089 n.14 (noting that the "dictates of reason and common sense," along with "the two-step inquiry of *T.L.O.* should have sufficed" to clearly establish that the actions of the defendants were unconstitutional (internal quotation marks omitted)).

The Court finds that in the Eleventh Circuit, *Thomas* was sufficiently on point to put school officials on notice that a search of the type allegedly conducted here was a violation of a student's constitutional rights under the Fourth Amendment.  *Redding* did not announce a new legal principle, at least not for the Eleventh Circuit; rather it essentially confirmed what was already the clearly established law in this Circuit.

---

[8]Plaintiff failed to respond to Defendants' motion for summary judgment as to RCSD's liability under § 1983.

that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a local government can only be held liable for constitutional torts when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" caused the injury. *Id.* at 694. Liability may be imposed for a single decision made by a government official "where the decisionmaker possesses final authority to establish . . . policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

In this case, RCSD contends that it is entitled to summary judgment because Plaintiff failed to establish that Kellogg is a final policymaker for RCSD. The Court agrees. RCSD had a policy of permitting searches based upon reasonable suspicion, and Kellogg, as assistant principal in charge of discipline, had the authority to order searches based upon reasonable suspicion.[9] (*See* Defs.' Br.

---

[9]The RCSD's policy provided, in part:

The Board authorizes reasonable searches of students directed to that end by the principal or authorized representative. A witness must be present at the time of a search.

The principal of each school or authorized representative, possesses the authority to conduct inspection of students' school lockers or articles carried upon their persons. Such search shall be based on a reasonable suspicion of the presence of deleterious items. Examples of deleterious items shall include, but are not limited to, secreted noise-makers, contraband drugs, a handgun or other dangerous weapons.

15.)   However,   although   Kellogg   had   discretion   to   order   searches within   the   school,   Plaintiff   failed   to   point   the   Court   to   any evidence   in   the   record   that   would   lead   a   reasonable   factfinder   to conclude   that   Kellogg   had   the   authority   to   alter   RCSD's   explicit policy   that   searches   could   not   be   conducted   absent   reasonable suspicion.   *See Thomas*,   261   F.3d   at   1173   ("When   an   official's exercise   of   her   discretionary   duties   is   constrained   by   policies   not of   that   official's   making,   those   policies,   rather   than   the subordinate's   departures   from   them,   are   the   act   of   the   [local government]."   (alteration   in   original)   (internal   quotation   marks omitted)).     Thus,   Kellogg's   decision   to   search   King   without reasonable   suspicion   cannot   be   said   to   fairly   represent   RCSD's policy.     Accordingly,   because   the   Court   finds   that   Plaintiff   has failed   to   create   a   genuine   issue   of   material   fact   as   to   whether Kellogg   is   a   final   policymaker   with   authority   to   rewrite   RCSD's

---

Principals   or   authorized   representative   of   each   school   where lockers   are   issued   shall   clearly   specify   in   writing   that lockers   are   subject   to   inspection   and   search   by   school officials.     Each   school   shall   maintain   duplicate   keys   or records   of   all   locker   combinations,   and   avoid   any   practice which   lead   students   to   believe   that   lockers   are   under   their exclusive   control.

In   the   event   the   search   of   a   student,   personal   possessions,   or locker,   reveals   the   student   is   concealing   material   possession of   which   is   prohibited   by   federal,   state   or   local   law,   local law   enforcement   authorities   shall   be   notified   so   that   they   may take   appropriate   action.

(Pl.'s   Ex.   1   to   Kellogg   Dep.,   Bd.   Policy:   Interrogations   &   Searches   of Students.)

search policy, RCSD is entitled to summary judgment as to Plaintiff's § 1983 constitutional claim.

**II.  Plaintiff's State Law Claims**

Plaintiff asserts state law claims against RCSD, Defendants in their official capacities, and Defendants in their individual capacities.  All Defendants contend that they are entitled to summary judgment as to Plaintiff's state law claims.  For the following reasons, the Court agrees.

A.   <u>Defendant Randolph County School District</u>

RCSD contends that it is entitled to summary judgment as to Plaintiff's state law claims because it is entitled to sovereign immunity.  The Court agrees.  "[S]overeign immunity extends to the state and all of its departments and agencies."  Ga. Const. art. I, § 2, ¶ IX (e).  As a school district, RCSD is a political subdivision of the state of Georgia and is therefore entitled to sovereign immunity unless waived.  *See Chisolm v. Tippens*, 289 Ga. App. 757, 759, 658 S.E.2d 147, 151 (2008).  "The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."  Ga. Const. art. I, § 2, ¶ IX (e).  Because Plaintiff has pointed to no waiver of sovereign immunity in this case, RCSD is entitled to summary judgment as to Plaintiff's state law claims.

22

B.   Defendants in their Official Capacities

"[W]here an officer or agent of the state is sued in his official capacity . . . it is a suit against the state and sovereign immunity attaches." *Price v. Dep't of Transp. of Ga.*, 257 Ga. 535, 537, 361 S.E.2d 146, 148 (1987) (internal quotation marks omitted); *see, e.g., Gilbert v. Richardson*, 264 Ga. 744, 750, 452 S.E.2d 476, 481 (1994).   Therefore, for the same reasons RCSD has sovereign immunity, the individual Defendants in their official capacities have sovereign immunity.   Accordingly, Defendants, in their official capacities, are entitled to summary judgment as to Plaintiff's state law claims.

C.   Defendants in their Individual Capacities

The individual Defendants in their individual capacities contend that they are entitled to summary judgment as to Plaintiff's state law claims because they are entitled to official immunity.   The Court agrees.   "[S]chool employees are entitled to official immunity from their actions if those actions are within the scope of their employment, discretionary in nature, and without wilfulness, malice, or corruption." *Wright v. Ashe*, 220 Ga. App. 91, 92, 469 S.E.2d 268, 270 (1996).   Where a task is ministerial, official immunity does not apply.   "Generally, a ministerial act is one that 'is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.'" *Meagher v. Quick*, 264 Ga. App. 639, 642, 594 S.E.2d 182, 185 (2003)

(quoting *Stone v. Taylor*, 233 Ga. App. 886, 888, 506 S.E.2d 161, 163 (1998)).  On the other hand, a discretionary task is one which "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."  *Stone*, 233 Ga. App. at 888, 506 S.E.2d at 163 (internal quotation marks omitted).

Georgia courts have repeatedly held that the supervision and discipline of students are discretionary acts.  *E.g., Gamble v. Ware County Bd. of Educ.*, 253 Ga. App. 819, 824, 561 S.E.2d 837, 843 (2002) (finding that the tasks of "supervising and disciplining school children constitute discretionary acts"); *Payne v. Twiggs County Sch. Dist.*, 232 Ga. App. 175, 177, 501 S.E.2d 550, 552 (1998) (finding that the investigation of a student's complaint against another student was discretionary); *Perkins v. Morgan County Sch. Dist.*, 222 Ga. App. 831, 834-35, 476 S.E.2d 592, 595-96 (1996) (finding that school authority's decision to allow early dismissal of a student was discretionary); *Wright,* 220 Ga. App. at 93-94, 469 S.E.2d at 271 (noting that the task imposed on teachers to monitor, supervise, and control students is a discretionary one).  Because the supervision and discipline of students is a discretionary function and because Plaintiff failed to point the Court to any evidence in the record that would lead a reasonable factfinder to conclude that Defendants acted with actual malice, Defendants, in their individual

24

capacities, are entitled to official immunity.[10]   Accordingly, the individual Defendants are entitled to summary judgment as to Plaintiff's state law claims against them in their individual capacities.

CONCLUSION

As discussed above, the Court finds that there are genuine issues of material fact as to whether Defendants Kellogg and Perryman violated King's Fourth Amendment rights.   The Court further finds that there are genuine issues of material fact as to whether Defendants Kellogg and Perryman are entitled to qualified immunity. Therefore, the Court denies Defendants' motion for summary judgment as to Plaintiff's § 1983 claims against Kellogg and Perryman in their individual capacities.   Defendants' motion (Doc. 18) is granted as to all of Plaintiff's remaining claims.


IT IS SO ORDERED, this 29th day of July, 2009.


S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[10]In the context of official immunity, "actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact." *Adams v. Hazelwood*, 271 Ga. 414, 414-15, 520 S.E.2d 896, 898 (1999) (internal citations and quotation marks omitted).